IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE  DIVISION

| | |
|---|---|
| Joyce Chavis, ) | Civil Action No.  6:05-1793-RBH-BHH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| Jo Anne B.  Barnhart, Commissioner, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the Court on the defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.    The plaintiff has pled claims for discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, as amended, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et. seq.*  The plaintiff alleges that the defendant discriminated against her on the basis of her race and age and in retaliation for her complaints regarding the same.  She further contends that the defendant's proffered justifications for not promoting her are subterfuges for actual unlawful motives.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

## FACTS PRESENTED

The plaintiff, a black female, began her employment with the defendant in 1970.

She has held various positions in various offices with the Social Security Administration ("SSA"), including Claims and Field Representative, Operations Supervisor, and Operations Analyst.  (*See generally* Pl. Attach. 2.)  It is undisputed in this case that the plaintiff has had a long and accomplished career with the defendant.  In fact, between 2001 and 2002, the plaintiff was on a Well-Qualified list for consideration in regards to three positions for which she applied but was eventually rejected.  (Def. Exs. 8, 20.)

First, the plaintiff applied for two Technical Expert (hereinafter referred to as either the "first" or "second TE position") positions on January 30, 2001.  (Def. Ex. 3.)  It is undisputed that the first of those two positions was granted to a white female, Joan Triplett, who is approximately the same age as the plaintiff (Def. Ex. 2 ¶ 10).  The second TE position was filled by a black female in her early thirties.  (Def. Ex. 2 ¶ 8, 9.)

The individual responsible for making the selection decision for the TE positions was Doris Ash, District Manager in the Greenville, SSA District Office.  (Def. Ex. 8; Ex. 9 ¶ 1.) At the time of the selections, Ash had only been in the Greenville office for approximately 5 months.  (Def. Ex. 9 ¶ 2.)  Accordingly, she relied upon the input of two Management Support Specialists, Sheila Pepper and Venita Billingslea, in deciding whom to select for the TE positions.  *Id*.  While Pepper was the plaintiff's direct supervisor, Billingslea was not. Both Pepper and Billingslea recommended Triplett and Burton over the plaintiff for the TE positions, although both believed that all three candidates were qualified.  *See generally infra*.

On September 25, 2002, the plaintiff also applied for a Management Support

2

Specialist (MSS) position.  (Def. Ex. 17.)  That position was eventually filled by a white female, Marian Briscoe.  (Def. Ex. 19 ¶ 6.)

Ash also made the selection of Briscoe for the MSS position, in consultation with a selection panel.  (Def. Ex. 21 ¶ 5.)  The panel was comprised of Pepper, Billingslea, Chadwick Gilmer (MSS), and Charles Barber (former Assistant District Manager).  *Id*.  After an interview with each individual on the Well-Qualified List, *id*., every individual on the selection panel recommended Briscoe except for Charles Barber. *Id*.

Concerning all three positions, the defendant contends that the plaintiff was primarily rejected because of deficiencies in her ability to relate to, and communicate with, others. The defendant contends that other candidates were better equipped in such areas for the jobs at issue.

## APPLICABLE LAW

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case

3

under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported

4

> as provided in this rule, an adverse party may not rest upon the
> mere allegations or denials of the adverse party's pleadings,
> but the adverse party's response, by affidavits or as otherwise
> provided in this rule, must set forth specific facts showing that
> there is a genuine issue for trial. If the adverse party does not
> so respond, summary judgment, if appropriate, shall be
> entered against the adverse party.

Fed. R. Civ. P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the

non-movant, he must produce existence of every element essential to his action that he

bears the burden of adducing at a trial on the merits.

## <u>DISCUSSION</u>

The Court would initially note that the plaintiff has submitted the affidavit of a

Charles Barber, who is a former Assistant Manager of the defendant's Greenville, South

Carolina, Social Security Office of approximately 14 years (Barber Aff. ¶ 2). Barber swears

in various and specific ways that the plaintiff was the most qualified for the TE positions.

(Barber Aff. ¶ 5-7.)

Paragraph 7 of Barber's affidavit also contains statements concerning Barber's

belief that the plaintiff was not selected for the TE position based upon her race and age.

The material portions are as follows:

> It does appear that she was not selected based on race
> because it appears that a decision was made that one of the
> selectees must be white regardless of their qualifications. I
> supsect Ms. Chavis' age played a part in her non-selection. .
> . . It would seem that the decision was made not to promote
> Ms. Chavis because it was assumed that she would be eligible
> for retirement in approximately four (4) years.

(Barber Aff. ¶ 7.) The Court will not consider this portion of Barber's affidavit as containing

5

"facts as would be admissible in evidence."  Fed. R. Civ. P. 56(e).  There is simply no indication that such conclusions are anything other than conjecture and speculation.  They must be based in personal knowledge and observation.  *See id*.  Accordingly, they will not have any bearing on the Court's consideration of this motion.

## I.    RACE DISCRIMINATION (FAILURE TO PROMOTE)

The plaintiff first contends that she was discriminated against on account of her race in that the defendant denied her application for a Technical Expert ("TE") position, in March of 2001.  The plaintiff alleges that the defendant promoted Joan Triplett, an allegedly less qualified, white employee, instead.   The plaintiff's only admissible evidence of race discrimination is what she believes are her demonstrably better qualifications for the position.

As the Fourth Circuit has explained, in the wake of *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), the plaintiff may avert the defendant's summary judgment motion "through two avenues of proof."  *Diamond v. Colonial Life & Acc. Ins. Co.*,  416 F.3d 310, 318 (4th Cir. 2005) (quoting *Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (emphasis added).  A plaintiff can survive a motion for summary judgment by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as race motivated the employer's adverse employment decision. *Diamond*, 416 F.3d at 318. Pursuant to the 1991 Act, the impermissible factor need not have been the sole factor. As long as it motivated the adverse action, the plaintiff can establish an unlawful employment practice. *See* 42

6

U.S.C.A. § 2000e-2(m). Alternatively, a plaintiff may "proceed under [the McDonnell Douglas ] 'pretext' framework, under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Hill*, 354 F.3d at 285. The plaintiff does not attempt to establish her discrimination or retaliation claim using direct or circumstantial evidence but relies exclusively on the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) burden-shifting proof scheme.[1]

Under *McDonnell Douglas*, an employee must first prove a *prima facie* case of discrimination by a preponderance of the evidence. If she succeeds, the employer has an opportunity to present a legitimate, nondiscriminatory reason for its employment action. If the employer does so, the presumption of unlawful discrimination created by the *prima facie* case drops out of the picture, and the burden shifts back to the employee to show that the given reason was just a pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 802-05.

In *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the Supreme Court reiterated that evidence of pretext, combined with the plaintiff's *prima facie* case, does not compel judgment for the plaintiff, because " [i]t is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's

---

[1] The plaintiff nowhere contends that she has direct evidence of retaliation or of a discriminatory failure to promote. In fact, other than her evidence concerning qualifications the record is entirely devoid of any evidence suggestive that any of the relevant individuals harbored racial or age animus.

explanation of intentional discrimination." *Id.* at 147 (citation omitted).  However, the Court also stated that, under the appropriate circumstances, "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.*  It is the plaintiff's burden to create an inference that the defendant's proffered reason is a pretext for intentional discrimination. *See id.* at 147-48.  Pretext analysis does not convert Title VII into a vehicle for challenging unfair--but nondiscriminatory--employment decisions. *Holder v. City of Raleigh*, 867 F.2d 823, 828 (4th Cir.1989). Conclusory allegations, without more, are insufficient to preclude the granting of the defendant's summary judgment motion. *Ross*, 759 F.2d at 365.

   A.     *Prima Facie* **Case**

   The parties essentially agree that to establish her *prima facie* case of a discriminatory failure to promote, the plaintiff must show: (1) that she is a member of a protected class; (2) that she applied for the position in question; (3) that she was qualified for that position; and (4) that the defendant rejected her application under circumstances that give rise to an inference of unlawful discrimination. *See Bryant v. Aiken Reg. Med. Ctrs., Inc.*, 333 F.3d 536, 544-45 (4th Cir. 2003); *Amirmokri v. Baltimore Gas & Elec. Co.*, 60 F.3d 1126, 1129 (4th Cir.1995).   There is simply no dispute as to the first three elements.  The plaintiff, however, has failed to even address the fourth element of her *prima facie* case and yet summarily claims to have established one.  The Court has not identified any evidence that would constitute circumstances that give rise to an inference

8

of unlawful discrimination.  In fact, it is telling that the plaintiff has not alleged or identified a single statement or action of the defendant or the relevant decisionmakers which suggest any discriminatory animus or motive – stray remarks, name-calling, prior complaints by other employees etc.  To the contrary, the defendant later filled a second TE position with a *black* female candidate – the same position that the plaintiff challenges on grounds of age discrimination.   Moreover, as discussed in greater detail below, the plaintiff's alleged proof of pretext is insufficient to double as evidence of circumstances giving rise to an inference of unlawful discrimination.  The Court can discern no basis to conclude that the fourth element has been satisfied; the plaintiff certainly has not offered one.

Notwithstanding, the Fourth Circuit, has emphasized that it is a "relatively easy test" to show that a qualified applicant, "'was rejected under circumstances which give rise to an inference of unlawful discrimination.'"  *Evans*, 80 F.3d at 960.  (quoting *Young v. Lehman*, 748 F.2d 194, 197 (4th Cir. 1985).  The Court, therefore, will consider the plaintiff's alleged evidence of pretext.

### B.    Legitimate Non-Discriminatory Reason

The defendant has met its burden of production by generally identifying the following legitimate, non-discriminatory reason for rejecting the plaintiff's application for the first TE position: that Triplett was better qualified than the plaintiff for the position.  Critically, the defendant does not claim that the plaintiff was *unqualified* for the position.  In fact, the defendant readily concedes that the plaintiff was a highly qualified candidate included in its "Well-Qualified List" for the position.  (*See* Def. Mem. Supp. Summ. J. at 4, 19-20.)

9

Instead, the defendant states that "the difference between the candidates was highlighted" by factors, including "a good rapport with staff, the need to be perceived by others as receptive to answering questions, a good ability to communicate, an approachable personality, and the ability to give and receive constructive criticism." *Id.* at 20.    "Job performance and relative employee qualifications [are] widely recognized as valid, non-discriminatory bas[i]s for any adverse employment decision." *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 960 (4th Cir. 1996); *see also Mackey v. Shalala*, 360 F.3d 463, 468 (4th Cir. 2004); *Karpel v. Inova Health System Services*, 134 F.3d 1222, 1229 (4th Cir. 1998) ("Inova's termination of Karpel was based on her unsatisfactory job performance, including,  her tardiness and failure to complete her monthly summaries.")

### C.    Pretext

Because the defendant has proffered a legitimate, non-discriminatory reason for the its actions, the plaintiff bears the burden of demonstrating that the real reason for discharge is an unlawful one.  *See Reeves*, 530 U.S. at 142-43.   As is most common, the plaintiff attempts to satisfy this burden by suggesting that the defendant's proffered reasons are pretextual or false.   *See id.* at 144.   Specifically, she claims that her qualifications were superior to Triplett's in that Triplett "had neither the education of the plaintiff nor the wide range of experience or seniority possessed by the Plaintiff with the Defendant's own Social Security Adminsitration."  (Pl. Resp. Summ. J. at 14.)

It is true, that "qualifications evidence" may suffice, at least in some circumstances, to show pretext.  *See Ash v. Tyson Foods, Inc.*, 126 S. Ct. 1195, 1197  (2006).  At this

time, however, the United States Supreme Court has left the determination of the standard by which the probative value of relative qualifications is to be considered to the circuit courts of appeals, respectively. *Id*. at 1198.

The Fourth Circuit has expressly instructed that, when comparing the relative job qualifications of two candidates, if "the plaintiff has made a strong showing that his qualifications are ***demonstrably superior***, he has provided sufficient evidence that the employer's explanation may be pretext for discrimination." *Heiko v. Columbo Savings Bank, F.S.B.*, 434 F.3d 249, 261-62 (4th Cir. 2006).  But where "a plaintiff asserts job qualifications that ***are similar or only slightly superior*** to those of the person eventually selected, the promotion decision remains vested in the sound business judgment of the employer." *Heiko, 434 F.3d at 261* (citing *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 649 & n.4 (4th Cir.2002) (emphasis added); *Evans*, 80 F.3d at 960).

The Court, therefore, will analyze evidence of the plaintiff's and Triplett's relative qualifications to determine whether a genuine issue of fact exists such that a jury could conclude that the plaintiff had demonstrably superior qualifications from Triplett.

It is helpful to first quote from the relevant vacancy announcement in regards to the duties and qualifications of a TE:

> Serves as a technical expert responsible for a wide range of difficult and complex adjudicative functions through face-to-face contacts with members of the general public representing all socio-economic levels and occupations.  Provides expert advice, information, and consultative services involving the interpretation of major provisions of the Social Security Act with the District Office.  Provides a lead role in technical training and mentoring other employees in interpretation of new

11

legislation, regulations, policies and procedures.  Informs the claimant and/or his representative of his rights and obligations under the Social Security Program. . . .

. . .

Experience in the development, examination, investigation, adjudication, or authorization of claims for retirement, survivors, and disability insurance, pension programs, health insurance, income maintenance, or related programs . . . . This experience must demonstrate ability to deal courteously and effectively with the public, to exercise ingenuity, and resourcefulness in the development of facts and information, and work with others.

(Def. Ex. 4 at 1-2.)  As reflected in the announcement and confirmed by the defendant, the

TE position emphasized positive communication skills, receptivity and accessibility, in

addition to technical competence.  (*See* Ex. 9 ¶¶ 5-8, 11.)

### 1.    The plaintiff's qualifications

The plaintiff has produced evidence of the following educational and professional

qualifications:

- 31 years of experience with the SSA (at the time of selection of the position)
- Bachelor degree in psychology and a minor in special education
- Graduate courses in organizational behavior and management/public administration
- Course in comparative analysis of organizational and administrative analysis
- Received the "Commissioner's Citation Award" for outstanding services as a Training Class Coordinator
- Claims and Field Representative from June 1970 to February 1976
- Operations Supervisor from February 1976 to July 1978
- Operations Analyst from July 1978 to May 1983
- Claims Representative from May 1983 through relevant time period
- Been a supervisor
- Given seminars and speeches
- Coordinated training courses

*(See generally* Pl. Aff. Attach. 2 to Resp. Summ. J.; Def. Ex. 3.)

The plaintiff has also produced the aforementioned affidavit of Charles Barber, a

former Assistant District Manager of the defendant.  Barber has sworn that he has observed the plaintiff to be "accessible" and willing "to help others."  (Barber Aff. ¶ 4.)  He further stated that the newest Claims Representative relies on the plaintiff more than others and that he has not observed people utilizing the plaintiff's services "any more or less than the services" of Triplett.  *Id*.

Barber has also indicated that the TE position is essentially the same as the Operations Analyst position previously held by the plaintiff.  *Id*. ¶ 5.  In that capacity, Barber indicates that the plaintiff processed "the most difficult claims."  *Id*.  Barber also swears that the plaintiff "knows both Title 2 and Title 16."  *Id*. ¶ 6.  Ultimately, in Barber's opinion, the plaintiff's "experience far exceeded that of either person who was selected as a Technical Expert in March 2001."  *Id*. ¶ 5.

As is conceded by the defendant, there is no question but that the plaintiff was highly qualified for the position, particularly from a technical aspect.  (Def. Ex. 9 ¶ 11.)

### *2.     Triplett's Qualifications*

- Highschool Education
- 26 years with the SSA (Def. Ex. 6) (at the time of the selection for the position)
- Knowledge in both Title 2 and Title 16 (Ex. 11 ¶ 5)
- Received performance awards (Def. Ex. 9 ¶¶ 7, 9)
- Excellent technical skills and background (Def. Ex. 9 ¶¶ 5, 10, 11; Ex. 10 ¶ 5; Ex. 11 ¶ 5)
- Background as a Service Representative, which gave her a "wider perspective than many who had not worked in capacities other than Claims Representative" (Def. Ex. 10 ¶ 5.)

Further it is the testimony of Ash, Billingslea, and Pepper, that Triplett had a "good rapport" with employees (Def. Ex. 11 ¶ 5), a "flexible . . . approachable . . . motivated . . . "can do" attitude (Def. Ex. 10 ¶ 5), was "well received" by others *id*., and had the

13

communication skills necessary for the job (Def. Ex. 9 ¶ 10).

### 3.    *Candidate Comparison*

The evidence presented by the parties reflects that both women exhibited technical excellence, received performance awards, and performed jobs which had substantially equipped them to perform the substantive components of the TE position.  The plaintiff offers no evidence whatsoever of Triplett's inability to perform the job – reprimands, prior evaluations, complaints, affidavits, etc.  While it is true that the plaintiff has more years of service with the SSA by approximately 5 years, both the plaintiff and Triplett have substantial experience and tenure with the defendant.  Moreover, years of experience alone does not necessarily make an individual better qualified to meet the demands of a position or organization, nor do more years of experience automatically make one candidate better qualified than another.  *See Heiko*, 434 F.3d at (stating that "greater management expertise due to her previous jobs at other banks and her role in the Mortgage Operations Department" does not "conclusively reveal[ ]" a non-discriminatory basis to compare the relative qualifications of the candidates); *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 269-71 (4th Cir. 2005).

The only real difference between the plaintiff's and Triplett's professional and educational backgrounds is the plaintiff's education level.  The plaintiff's educational experience is certainly superior to Triplett's.  The plaintiff, however, has failed to explain how her education makes her demonstrably more qualified for the TE position.  The defendant has submitted evidence that the plaintiff's college and graduate classes are neither requirements nor even factors for consideration.  (Exs. 4, 5.)  This evidence is unrebutted.

The Court simply does not see how a reasonable jury could infer a discriminatory motive from the disparity in educational backgrounds.  *See Heiko*, 434 F.3d at 261; *Anderson*, 406 F.3d at 269-71.  The defendant does not contest the qualifications of the plaintiff, including her education, or claim that Triplett was chosen because of superior educational background.  The defendant has consistently stated that both candidates were highly qualified but that Triplett had exhibited superior interpersonal skills.  Therefore, evidence that the plaintiff has more education, even demonstrably more, of itself, does not have any tendency to suggest that the defendant's expressed belief -- that the plaintiff has less interpersonal skills than Triplett -- is pretextual or false.

By contrast, if the vacancy announcement or decisionmakers had required a minimum level of education or emphasized the importance of undergraduate and graduate experience or had otherwise put such qualifications more directly, or even indirectly, at issue, then the plaintiff's evidence would be probative.  As it stands, the sheer fact that the plaintiff has had more education than Triplett simply does not reflect anything of significance in regards to discrimination or falsified motives.  The Court sees no way in which a jury could conclude otherwise.  Were it true that Triplett was somehow demonstrably inferior in another more relevant consideration or, frankly, in any other consideration the outcome might be different.  She is not.

As stated, the primary consideration for which the plaintiff was purportedly denied the TE position was her alleged issues with communication and working with others.  To that end, "an element of subjectivity is essentially inevitable in employment decisions; provided that there are demonstrable reasons for the decision, unrelated to sex, subjectivity is permissible."  *Equal Employment Opportunity Commission v. Aetna*

15

*Insurance Co.*, 616 F.2d 719, 726 (4th Cir.1980) (involving candidate who demonstrated in an interview that he had the personality to be a successful underwriter, supervisor, and manager). Accordingly, personality, communication skills, and interpersonal behavior are acceptable bases for distinguishing between otherwise eligible candidates. *See, e.g., Strag v. Board of Trustees, Craven Community College,* 55 F.3d 943, 949 (4th Cir.1995) (finding that "he demonstrated in his interview that he had the *personality traits* to succeed as an underwriter and later as a supervisor and a manager" (emphasis added).); *see also Chambers v. Metropolitan Property and Cas. Ins. Co.*, 351 F.3d 848, 857-58 (8th Cir. 2003) (asserting that the younger candidates it hired were similarly qualified but better suited in personality for the job).

The defendant has put forward evidence that the individuals involved in the decision making process did not give the TE position to the plaintiff because they believed that she lacked a positive attitude, was resistant to certain requests regarding her cases, and made other employees feel uncomfortable or hesitant about approaching her for help. (*See* Def. Ex. 9 ¶ 11; Def. Ex. 10 ¶ 6, 7; Def. Ex. 11 ¶ 6.) As indicated, the plaintiff has responded with the affidavit of Charles Barber, which indicates that in his experience he has "not observed people utilizing Ms. Chavis' services any more or less than the services of the Claims Representatives who were selected as Technical Experts." (Barber Aff. ¶ 4.) He also stated that the newest Claims Representative relies on Ms. Chavis. *Id*.

The Court obviously cannot weigh this evidence. But even viewing Barber's testimony in a light most favorable to the plaintiff, as the Court must, it does not demonstrate that the plaintiff has demonstrably superior interpersonal and communication

16

skills. At best, it demonstrates simply that she had interpersonal and communication skills *equal* to Triplett's. *Id*. (failing to observe others utilizing the plaintiff "any more or less").

More importantly, Barber's testimony does not "bear on the critical inquiry" – whether *Ash, Billingslea, and Pepper* honestly believed that the plaintiff had a good attitude and worked well with others. *See King v. Rumsfeld*, 328 F.3d 145, 150 (4th Cir. 2003). Barber's testimony does nothing to undermine the "perception" of those individuals that the plaintiff was deficient in such areas relative to Triplett. Of course it is fundamental that "[i]t is the perception of the decision maker which is relevant," *Evans*, 80 F.3d at 960-61. By extension, therefore, Barber's independent perception is "close to irrelevant." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir.2000) ("The alleged opinions of Hawkins' co-workers as to the quality of her work are [ ] close to irrelevant." (citation omitted)); *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 444 (4th Cir.1998) ("[A]lthough the affidavits put forth by Tinsley document the fact that certain co-workers, Bank customers, and attorneys believed Tinsley was doing a good job, they fail to address whether management honestly believed that Tinsley was doing a good job."). Said differently, even if a jury believed Barber that he had not observed other employees avoiding the plaintiff, such testimony says nothing about the veracity of whatever Ash, Pepper, and Billingslea may have observed and believed about the plaintiff. Such perceptions are entirely unrebutted in this case. Accordingly, the plaintiff's race discrimination claim must fail both because she has presented a dubious *prima face* case and failed to present any evidence that the defendant's reasons for denying her the TE position were pretextual.

II.     **ADEA CLAIM**

The plaintiff next claims that she was denied a second TE position on account of her *age*, when the position was given to a younger, black female named Janice Burton.

In an age discrimination case, a plaintiff must prove that "but for" her employer's discriminatory intent, she would not have been fired or laid off.   *See Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230, 238 (4th Cir.1982).   A plaintiff can meet this burden either through direct or indirect proof, or by invoking the Title VII, *McDonnell Douglas* scheme of proof. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Goldberg v. B. Green & Co.*, 836 F.2d 845 (4th Cir.1988).   The plaintiff has invoked the latter.

A.     ***Prima Face* Case**

To establish such a *prima facie* case of age discrimination, a plaintiff must demonstrate that: (1) she was at least 40 years old; (2) her employer had an open position for which she applied and was qualified; (3) she was rejected despite her qualifications; and (4) the position remained open or was filled by a similarly qualified applicant who was substantially younger than the plaintiff, whether within or outside the class protected by the ADEA.   *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 310-312 (1996).   It is indisputable that the plaintiff has made out a *prima facie* case.   At the time that the second TE position was filled, there is no debate that she was over 40 years of age, that the position was open and that she was qualified, that she did not receive the second TE position in spite of such qualifications, and that Burton, an individual substantially younger and outside of the protected class was given the job.

18

### B.     Legitimate Non-Discriminatory Reason

In regards to the second TE position, the defendant has advanced the same legitimate, non-discriminatory reason – that the plaintiff had less interpersonal and communication skills than Burton.  Again, the defendant does not claim that the plaintiff was *unqualified* for the position.  To the contrary, the defendant repeatedly concedes that the plaintiff was a highly qualified candidate.  The defendant simply claims that Burton was better equipped to work well with others.  As stated, the "[j]ob performance and relative employee qualifications [are] widely recognized as valid, non-discriminatory bas[i]s for any adverse employment decision."  *Evans*, 80 F.3d at 960.  And, subjective distinctions between candidates based on personality and behavior are acceptable.  *See Aetna Insurance Co.*, 616 F.2d at 726; *Strag,* 55 F.3d at 949; *Chambers*, 351 F.3d at 857-58.

### C.     Pretext

As with her race claim, the plaintiff's only argument that the defendant's legitimate, non-discriminatory reason is false is that she was substantially more qualified than Janice Burton who was awarded the second TE position.  The Court has already discussed the plaintiff's qualifications.

### 1.     *Burton Qualifications*

The undisputed evidence demonstrates that Burton had the following educational and professional qualifications:

- 12 years of experience with SSA (Def. Ex. 7)
- Experience as a "generalist" meaning that she knew both Title 2 and Title 16 well (Def. Ex. 9 ¶ 10; Ex. 10 ¶ 5)
- College degree (Def. Ex. 7)
- Received performance awards (Def. Ex. 9 ¶¶ 7, 9)
- Excellent technical skills and background (Def. Ex. 10 ¶ 4; Ex. 11 ¶ 3)

19

Further it is the testimony of Ash, Billingslea, and Pepper, that other employees consulted with Burton (Def. Ex. 11 ¶ 3); used her as a "resource when they had questions" (Def. Ex. 10 ¶ 4); "made sure that [during training] her audience understood what she was communicating,"*id*.; and generally, "communicated positively with everyone" (Def. Ex. 9 ¶ 10).

### C.    Comparison

As with Triplett, the evidence presented by the parties reflects that both the plaintiff and Burton exhibited technical excellence, received performance awards, and performed jobs which had substantially equipped them to perform the substantive components of the TE position.  The plaintiff does not contest in any way Burton's prior performance or ability to perform the job.  Both women had college degrees.  Unlike Triplett and the plaintiff, however, Burton had substantially fewer years with the SSA.  As stated, however, years of experience alone does not necessarily make an individual better qualified to meet the demands of a position or organization, nor do more years of experience automatically make one candidate better qualified than another.  *See Heiko*, 434 F.3d at (stating that "greater management expertise due to her previous jobs at other banks and her role in the Mortgage Operations Department" does not "conclusively reveal[ ]" a non-discriminatory basis to compare the relative qualifications of the candidates); *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 269-71 (4th Cir. 2005).

At the time she was selected for the TE position, Burton had been with the SSA approximately 10 years, not an insubstantial period of time.  Although not nearly the tenure of the plaintiff who had 31 years of service, no reasonable jury could conclude simply

20

based on the number of years alone, who, between the candidates, was most qualified and certainly not that the plaintiff was demonstrably more qualified.  The defendant has submitted evidence that Burton actually had more recent and relevant experience with Title 16 than the plaintiff.  (Def. Ex. 11 ¶ 4.)  The plaintiff has offered no evidence in rebuttal, much less any concerning the relevance of her Title 16 experience as compared to Burton's such that a jury could conclude that her experience was *demonstrably* superior. The evidence simply does not create the type of issue of fact that the plaintiff wishes it to – namely that she was demonstrably more qualified than Burton in any relevant respect. The evidence actually demonstrates the exact opposite - that all the candidates were remarkably similar in their qualifications.

What the plaintiff has wholly failed to produce is any evidence that the defendant's belief – that Burton was not friendlier, more available, and a better communicator than the plaintiff – was not its true belief.  *See Reeves*, 530 U.S. at 144.   Such is her burden to do. As stated previously, in regards to Triplett, Charles Barber's and the plaintiff's personal observations about the plaintiff's interaction with employees and her ability to communicate effectively are simply not relevant to the inquiry.  *See Hawkins*, 203 F.3d at 280.

The defendant has put forward evidence that the individuals involved in the decision-making process did not give the TE position to the plaintiff because they believed that she lacked a positive attitude, was resistant to certain requests regarding her cases, and made other employees feel uncomfortable or hesitant about approaching her for help. (*See* Def. Ex. 9 ¶ 11; Def. Ex. 10 ¶ 6, 7; Def. Ex. 11 ¶ 6.)  As with Triplett, this evidence, in terms, of the genuineness of the defendant's *beliefs*, has not been undermined or even met by any of the evidence of the plaintiff.

As a final note, the plaintiff has submitted the testimony of Barber that he believes that the plaintiff's proximity to retirement was instrumental in the decision not to award the second TE position to the plaintiff.  There is nothing in his affidavit that suggests this conclusion is based in any personal knowledge.  *See* Fed. R. Civ. P. 56(e).  He was not privy to any conversation, memorandum, or correspondence that suggested as much.  His speculation in that regard appears based exclusively on the relative ages of the plaintiff and Barber.  In fact, he states "I *suspect* Ms. Chavis' age played a part in her non-selection." (Barber Aff. ¶ 7 (emphasis added).)  His suspicions are inadmissible testimony and will not be considered on summary judgment.  *See* Fed. R. Civ. P. 56(e).

Even were the Court to consider it, the testimony on its face does not have the tendency to show any particular motive on behalf of the defendant to deny the plaintiff the position.  The Court does not understand, and the plaintiff has not explained or presented any evidence as to, how her assignment to the TE position would have detrimentally affected the defendant in regards to the plaintiff's impending retirement.  The Court assumes that maybe the defendant would have been responsible for greater retirement benefits as a result of the promotion but there is no evidence in the record, or at least none cited to the Court, from which a jury could so conclude.  This is not a case where the plaintiff was fired on the eve of retirement in favor of a younger employee.  The evidence simply seems impotent to impute some discriminatory motive rooted in age and retirement prospects.  The Court need not so expressly conclude, however, because the affidavit of Barber in this regard is not suitable for consideration.  *See id.*

### III.     Retaliation

Finally, the plaintiff contends that she was denied a third position of Management Support Specialist (MSS) for having filed a charge of discrimination with the EEOC in regards to the two TE positions.

Title VII makes it an "unlawful employment practice for an employer to discriminate against any of [its] employees . . . because he [or she] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).  The *McDonnell Douglas* burden shifting scheme, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies in analyzing retaliation claims under Title VII.  *Smith v. First Union Nat'l Bank*, 202 F.3d 234 (4th Cir. 2000).  As stated, the defendant does not attempt to use direct evidence to establish her claim of retaliation.

### A.     *Prima Face* Case

In order to establish a *prima facie* case of Title VII retaliation, the plaintiff must prove three elements: (1) that she engaged in a protected activity, (2) that an adverse employment action was taken against her, and (3) that there was a causal link between the protected activity and the adverse employment action.  *See EEOC v. Navy Federal Credit Union,* 424 F.3d 397, 406 (4th Cir. 2005); *Mackey v. Shalala*, 360 F.3d 463, 469 (4th Cir. 2004).

The defendant contends that the plaintiff cannot show a causal connection between her Charge of Discrimination filed in April of 2001 and the rejection of her application for the MSS position in November of 2002.   The Fourth Circuit has stated that "very little evidence of a causal connection is required to establish a prima facie case" and "merely

23

the closeness in time between the filing of a discrimination charge and an employer's firing an employee is sufficient" to satisfy the causation element of a *prima facie* retaliation case. *Tinsley v. First Union Nat. Bank*, 155 F.3d 435, 443 (4th Cir.1998); *see also Williams v. Cerberonics, Inc.*, 871 F.2d 452 (4th Cir.1989) (holding three month time period between protected activity and termination sufficient to satisfy the causation element of the *prima facie* case of retaliation); *Carter v. Ball*, 33 F.3d 450 (4th Cir. 1994) (finding causal link between filing of retaliation complaints and the plaintiff's demotion five months later). However, the nearly year and a half between her charge of discrimination and the defendant's rejection of her application for the MSS position "negates any inference that a causal connection exists between the two." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir.1998); *see also Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998) ("[T]hirteen month interval between the charge and termination is too long to establish causation absent other evidence of retaliation.") Without a temporal proximity, the plaintiff must produce some "other evidence" establishing causation. *Causey*, 162 F.3d at 803.

The plaintiff, therefore, argues that a causal connection is established because Marian Briscoe was "woefully unqualified" for the position. (Resp. Summ. J. at 26.) The Court disagrees. Not only was Briscoe not unqualified, she was affirmatively qualified and there is no evidence in the record to the contrary.

The vacancy announcement for the MSS position states that the applicant must have the following specialized experience:

> 52 weeks of experience which has equipped the candidate with
> the particular knowledge, skills, and abilities to successfully

24

perform the duties of the position and which is typically in or related to the position to be filled; i.e., development examination, investigation, adjudication, or authorization of claims for retirement, survivor insurance, disability insurance, pension programs, health insurance, income maintenance or related programs. To be credible, this experience must have been at least equivalent to the next lower grade level.

TIME IN GRADE REQUIREMENTS: Applicants for promotion must have 52 weeks at the GS-11 level

(Def. Ex. 15 at 2.) The plaintiff nowhere challenges Briscoe's qualifications as compared to the vacancy announcement. In fact, the plaintiff does not challenge Briscoe's ability to perform the job in any respect. Instead, the plaintiff again complains that Briscoe only has a highschool education and had been with the SSA for roughly 11 years at the time of her selection for the position. Of course neither of these facts disqualifies her from consideration for the position, as posted. (Def. Exs. 15, 16, 20.) Under the vacancy qualifications, she was expressly deemed qualified. (*See* Def. Ex. 20.) It is beyond the pale for the plaintiff to summarily contend that she was unqualified much less "woefully" so. The plaintiff has not directed the Court to any authority that states that selection of a wholly qualified candidate for a job, even one with less tenure and education than the plaintiff, is evidence of a *causal connection* between protected activity and alleged retaliation. The Court has not found one. As opposed to the pretext analysis where the plaintiff pits her qualifications against those of the other applicant, here, the plaintiff has simply alleged that Briscoe is unqualified for the position. The evidence does not reflect any such fact and no reasonable jury could conclude otherwise.

If the district court concluded that the plaintiff had established a *prima facie* case, the plaintiff still would not be able to show pretext. For virtually all the same reasons

25

discussed in regards to Triplett and Burton, the plaintiff has failed to create any genuine issues of fact as to whether her qualifications were demonstrably superior to Briscoe's or whether the defendant's proffered reasons for rejecting the plaintiff – her interpersonal skills – is false. Her continued emphasis on her education and tenure of service in relation to the other candidates is simply insufficient, as a matter of law, to constitute evidence of pretext. She offers no more in regards to Briscoe.

Finally, the plaintiff claims that Barber stated in his affidavit that the plaintiff was "branded" for having filed a charge. The plaintiff does not cite to a paragraph in the affidavit containing such a statement and the Court has not identified one.[2] (*See* Pl. Attach. 1.) The plaintiff has not produced or alleged any other direct or indirect evidence of retaliation.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the defendants' motion for summary judgment be granted.

IT IS SO RECOMMENDED.


s/Bruce H.  Hendricks
United States Magistrate Judge

February 8, 2007
Greenville, South Carolina.

---

[2]  As is symptomatic of the brief, quotations are made to various pieces of evidence without specific citations. Instead, the plaintiff simply inserts an "(emphasis added)" in lieu of any specific cite.

26